USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 11/26/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS FIGUEROA,

                Petitioner,

-against-

UNITED STATES OF AMERICA,

                Respondent.

1:17-cv-09505 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

On March 18, 2014, a jury unanimously convicted Luis Figueroa on three counts related to drug trafficking and unlawful possession of a firearm. Subsequently, this Court sentenced Figueroa to 180 months' imprisonment to be followed by five years' supervised release. The United States Court of Appeals for the Second Circuit affirmed the conviction. *See United States v. Figueroa*, 663 F. App'x 25 (2d Cir. 2016). Now, before the Court are Figueroa's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 ("the Petition") and his motion to amend the Petition in light of an intervening change in the law. For the reasons set forth below, Figueroa's motions are hereby **DENIED**.

## BACKGROUND

### I. Factual Background:

In October 2013 Figueroa was indicted on three counts in a superseding indictment: (1) conspiracy to distribute, and possess with intent to distribute, illegal narcotics in violation of 21 U.S.C. §§ 841(b)(1)(A), 846; (2) unlawful possession of a firearm after having sustained a felony conviction, in violation of 18 U.S.C. § 922(g); and (3) possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c).

In 2014, Figueroa proceeded to trial. The Government's case revealed that Figueroa was a wholesale narcotics distributor in the New York City area who received more than 45 kilograms

1

of cocaine and heroin from Mexico via California. The Government presented the testimony of two of Figueroa's fellow distributors, Frank Hylton and Johnny Ray Houston, who testified to delivering cocaine and heroin to Figueroa for distribution. Tr. at 164–80, 187–91, 269–320. Defense counsel cross-examined both Hylton and Houston. Tr. at 215–28. The Court permitted Hylton to identify Figueroa in court after determining that there was an independent basis for the in-court identification made at an earlier *Wade* hearing. Tr. at 302. The Court also denied defense counsel's request to offer expert testimony to impeach Hylton's in-court identification.

The Government introduced GPS tracking data obtained from Figueroa's cell phone, which showed that Figueroa traveled to the location of the above-referenced drug transaction from 380 McLean Avenue in Yonkers, New York (the "McLean Apartment"). Tr. at 350–60, 626–29, 637–39. The Government later established that the McLean Apartment was one of Figueroa's residences based on cell phone records that showed Figueroa traveling to and from the McLean Apartment in the weeks leading up to his arrest. Tr. at 624–27, 654–58, 662. The Government corroborated the GPS tracking data by offering a surveillance video that placed Figueroa at the McLean Apartment. Tr. at 653–62. The Government also offered the testimony of Special Agent Kivlehan, who testified to seeing Figueroa in the parking lot of the Mclean Apartment and indicated that he watched Figueroa enter the apartment building on November 17, 2011. Tr. at 653. Defense counsel objected to parts of Agent Kivlehan's testimony at trial, and the Court overruled these objections. The jury returned a unanimous verdict convicting Figueroa on all three counts. Tr. at 1338–39.

II.     **Procedural Background:**

In July 2015, the Court sentenced Figueroa to 120 months for Counts One and Two to run concurrently and 60 months for Count Three to run consecutively with Counts One and Two. The

Second Circuit upheld Figueroa's convictions on direct appeal, finding that the District Court properly denied Figueroa's motions to suppress historical cell-cite data; properly excluded extrinsic evidence seeking to impeach Hylton; and properly denied defense counsel's requests for an expert to testify about the reliability of in-court identifications. *United States v. Figueroa*, 663 F. App'x 25, 28 (2d Cir. 2016). Proceeding *pro se*, Figueroa filed a motion for relief pursuant to 28 U.S.C. § 2255 (the "Petition") on November 30, 2017. ECF No. 1. After the Government filed it opposition (ECF No. 5) and Figueroa replied to the opposition (ECF No. 10), he filed a motion to amend the Petition in light of an intervening change in law—namely, the Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). ECF No. 11. The Government responded to Figueroa's motion to amend on September 29, 2018. ECF No. 192.[1]

## LEGAL STANDARD

### A. 28 U.S.C. § 2255

28 U.S.C. § 2255 allows a person convicted in federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). Under § 2255, a court may grant relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotation marks omitted); *see also* 28 U.S.C. § 2255.

---

[1] The Government filed this response in the docket related to Figueroa's criminal case (*United States v. Figueroa*, 12-CR-233) instead of in the docket related to Figueroa's civil case (*Figueroa v. United States of America*, 17-CV-9505).

When considering a § 2255 motion, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). "However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." *Id.* at 131. If it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas petitioner is not entitled to relief, "the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. § 2255.

Finally, in ruling on a § 2255 motion, the Court construes a *pro se* petitioner's submissions liberally and interprets them "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d. Cir. 2009) (quoting *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001)) (internal quotation marks omitted).

**B. Procedural Bars**

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). "An exception applies, however, if the defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." *Id.*

To show "cause," the movant must show that "some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S.

4

478, 488 (1986). "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause' . . . because the attorney is the prisoner's agent, and under 'well-settled principles of agency law,' the principal bears the risk of negligent conduct on the part of his agent." *Maples v. Thomas*, 132 S. Ct. 912, 922 (2012) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753–754 (1991)). But "[i]neffective assistance of appellate counsel may constitute cause for a procedural default." *Xiang v. United States*, No. 09-CV-7579, 2010 WL 3155052, at *4 (S.D.N.Y. Aug. 6, 2010) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). To prevail on such a claim, the movant "must show, first, that appellate counsel committed errors so serious as to be objectively unreasonable and, second, that the result of the proceeding would likely have been different in the absence of counsel's errors." *Id.* (citing *Wiggins v. Smith*, 539 U.S. 510, 520–521 (2003)); *see also Strickland v. Washington*, 466 U.S. 668 (1984). As in all ineffective assistance of counsel claims, the movant must overcome a strong presumption that counsel exercised reasonable professional judgment: "Appellate counsel does not have a duty to raise all colorable claims on appeal; rather, counsel should use reasonable discretion to determine which claims constitute a defendant's best arguments for obtaining a reversal of a conviction." *Forte v. LaClair*, 354 F. App'x 567, 569 (2d Cir. 2009).

Together with showing cause for a default, the movant must show prejudice from it. To make this showing, he must establish that he suffered "actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). A showing that the errors created a "possibility of prejudice" is not enough; the movant must show that the errors "worked to his actual and substantial disadvantage." *Id.* at 170 (emphasis in original).

In the alternative, a court may grant a § 2255 motion despite procedural default if the movant can show that he is "actually innocent." *Carrier,* 477 U.S. at 496. "To establish actual

innocence, the defendant must demonstrate that 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995)). Under this standard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Id.*

In addition to the procedural bar on claims not raised on direct appeal, "a section 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001); *see also United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977) (per curiam) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255"). "If [the movant] thus raises an issue that was dealt with on direct appeal, he will be procedurally barred from proceeding with the challenge." *Sanin*, 252 F.3d at 83. However, the procedural default bar "does not generally apply to claims of ineffective assistance of counsel." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007).

## C. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, the movant must demonstrate that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 668, 688–694 (1984). "At the second step of analysis, a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012). Counsel is granted "wide latitude" and there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. As the

6

Second Circuit has noted, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001).

## Discussion

Figueroa raises six grounds for relief. First, Figueroa raises three procedurally barred claims: (1) the Court erred in admitting part of Agent Kivlehan's testimony about a conversation he had with the superintendent of the McLean apartment, *see id.* at 4; (2) the Court erred in denying his motion to suppress Hylton's in-court identification, *see id.* at 5; and (3) the Court erred in denying his various motions to suppress historical cell-site location data, *see id.* at 9. Next, Figueroa raises three ineffective assistance of counsel claims. He alleges that his counsel was constitutionally deficient because he failed to: (4) retain a qualified expert on the subject of eye-witness identification, *see id.* at 6; (5) object to Agent Kivlehan's testimony about the conversation he had with the superintendent, since this testimony allegedly violated the Confrontation Clause, *see id.* at 4; and (6) pursue certain lines of cross-examination at the *Wade* hearing, *see id.* at 8. Finally, Figueroa argues that a recent Supreme Court decision, *Carpenter v. United States*, 138 S. Ct. 2206 (2018), mandates that the cell-site information obtained from Figueroa must be suppressed after the court grants him a new trial. *See* Motion to Amend, ECF No. 11.

### I. Procedurally Defaulted Claims

In his first claim, Figueroa argues that the Court erred in admitting part of Agent Kivlehan's testimony about a conversation he had with the superintendent of the McLean apartment. Figueroa's only explanation for not raising this argument on direct appeal is that his defense counsel was ineffective. *See* Petitioner's Brief at 4. Although ineffective assistance of counsel can be grounds to overcome procedural default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000),

7

for the reasons discussed below, Figueroa cannot meet the stringent standard of the *Strickland* ineffective assistance of counsel test for this claim.

In his second claim, Figueroa argues that the Court erred in denying his motion to suppress Hylton's in-court identification, *see* Petitioner's Brief at 5. Figueroa acknowledges that he did not raise this issue in his direct appeal and provides no justification or reason for not raising this issue. Accordingly, this argument is procedurally barred. *See, e.g., Massaro v. United States*, 538 U.S. 500, 502 (2014) ("the general rule [is] that claims not raised on direct appeal may not be raised on collateral review.").

In his third claim, Figueroa attempts to relitigate the Court's decision to deny his various motions to suppress historical cell-site location data, *see* Petitioner's Brief at 9. Petitioners cannot relitigate issues that were already raised and rejected on direct appeal. *See, e.g., Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010) (quoting *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007)) ("A Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal."). On direct appeal, Figueroa raised three arguments related to the suppression of the historical cell-site data, and the Second Circuit rejected them all. First, Figueroa argued that the Drug Enforcement Administration ("DEA") "engaged in improper pre-authorization data collection" when his cellphone provider disclosed the location of his cellphone to a DEA agent. In rejecting this argument, the Second Circuit explained, "[e]ven assuming without deciding that the DEA engaged in an unreasonable search . . . we see no reason to disturb the District Court's conclusion that . . . the remaining averments provide more than adequate support for a probable cause determination." *Figueroa*, 663 F.App'x at 26 (internal citation and marks omitted). Next, Figueroa argued that the affidavit in support of the Government's November 15, 2011 warrant application contained material omissions because "it excluded the more specific intersection

location information for the cellphone, referring instead only to the fact that the cellphone was located in Yonkers, New York." The Second Circuit also rejected this argument, stating that "the inclusion of the more precise cell-location information would have buttressed rather than undermined the court's probable cause determination, which was sufficiently supported by the remaining statements in the affidavit." *Id.* at 27. Lastly, Figueroa contended that the second warrant the Government obtained for Keisa Hernandez's (Figueroa's co-habitant) cell-cite location data was invalid because "there was insufficient evidence that . . . Hernandez was involved in drug dealing or that the apartment where Hernandez and Figueroa resided was the site of a multi kilogram delivery of cocaine." *Id.* The Second Circuit rejected these contentions, concluding that "[w]e agree with the District Court that the information contained in the affidavit provided probable cause to believe that Figueroa was using the apartment as a drug stash house and that Hernandez lived there, used the cellphone that was the subject of the affidavit, was involved in the drug conspiracy with Figueroa." *Id.* Figueroa raises each of these arguments again. *See* Petitioner's Brief at 9. As the Second Circuit has repeatedly made clear: "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992)). Because these arguments were raised and rejected by the Second Circuit on direct appeal, they are procedurally barred.

## II. Ineffective Assistance of Counsel

### a. Counsel's Failure to Secure a Qualified Expert on In-Court Identifications

Figueroa claims that defense counsel was ineffective for failing to retain a qualified expert on the subject of eye-witness identification. This claim, however, cannot adequately form the basis for an ineffective assistance of counsel claim, since the merits of the argument were rejected on

9

direct appeal. As the Second Circuit has noted: "The failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner was entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). Figueroa claims that counsel should have secured a qualified expert to testify about the reliability of in-court identifications. However, Figueroa raised essentially the same argument on direct appeal. Specifically, Figueroa argued that the Court erred in precluding defense counsel from calling Kevin Hinkson to testify as an expert on identifications. The Second Circuit rejected this claim on direct appeal. *See Figueroa*, 663 F. App'x at 28 ("We further conclude that the District Court did not abuse its discretion in precluding Figueroa from introducing the testimony of an expert in police-arranged identification."). In addition, the Second Circuit inferred that even if counsel secured a different expert, the outcome would not have been different. *See id.* ("We see no reason to disturb the District Court's assessment that the proffered witness was not qualified to testify as an expert at least in part because the testimony would not be helpful to the jury 'to understand the evidence or to determine a fact in issue.'") (internal citation omitted).

### b. Counsel's Failure to Object to Agent Kivlehan's Hearsay Testimony

Figueroa next claims that defense counsel was ineffective for failing to object to Agent Kivlehan's testimony about the conversation Agent Kivlehan had with the superintendent of Figueroa's building, since this testimony allegedly violated the Confrontation Clause. *See* Petitioner's Brief at 4. This claim must be denied because Figueroa cannot show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 669 (1984).

Violations of the Confrontation Clause are subject to harmless error review. *See United States v. Santos*, 449 F.3d 93, 99 (2d Cir. 2006). To determine whether a Confrontation Clause

violation was harmless error, courts evaluate "many factors, including the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Gutierrez v. McGinnis*, 389 F.3d 300, 308 (2d Cir. 2004) (internal citation and quotation marks omitted). While no one factor is dispositive, "[t]he strength of the prosecution's case is probably the single most critical factor." *Latine v. Mann*, 25 F.3d 1162, 1167–68 (2d Cir. 1994) (internal quotation marks omitted).

Figueroa contends that admitting Agent Kivlehan's statement that "[t]he super told me [Petitioner] lived in apartment 2E [at the McLean Apartment] but didn't know his name," Tr. at 656, violated Figueroa's Sixth Amendment right to confront the witnesses against him because the statement was hearsay and testimonial, and because he did not have the opportunity to cross-examine the superintendent. The Government, on the other hand, argues that the testimony was entirely permissible "because it was not being offered for the truth but instead to explain the agent's state of mind and subsequent investigation steps." Government's Opposition Brief at 10. The Court agrees with the Government that this statement was not offered for the truth of the matter asserted—that is, it was not offered to prove that Figueroa did indeed live at apartment 2E. Moreover, even assuming that the statement was testimonial and hearsay, its admission was harmless error. Given the other overwhelming evidence that Figueroa lived at the McLean apartment—including the video surveillance and the GPS tracking evidence—Figueroa cannot establish that any Confrontation Clause violation was not harmless. Therefore, defense counsel's performance neither fell below an objective standard of reasonableness nor did it prejudice Figueroa.

### c. Counsel's Failure to Cross-examine Hylton and Call Agent Kaden at the *Wade* Hearing.

Figueroa also claims that defense counsel was ineffective for failing to pursue certain lines of cross-examination at the *Wade* hearing. *See* Petitioner's Brief at 8. This claim must be denied because Figueroa cannot establish that counsel's performance "fell below an objective standard of reasonableness" of "prevailing professional norms." *Strickland*, 466 U.S. at 687–688.

Figueroa argues that defense counsel was ineffective at the *Wade* hearing because he failed to cross-examine Hylton based on the factors outlined by the Supreme Court in *Neil v. Biggers*, 409 U.S. 188 (1972). However, Figueroa does not establish that defense counsel's decision not to pursue certain lines of questioning on cross-examination "was objectively unreasonable." Indeed, defense counsel extensively cross-examined Hylton. Tr. at 93–109. Further, "[d]ecisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature" and thus afforded a presumption of reasonableness. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Figueroa's argument does not overcome the "strong presumption" that defense counsel's conduct fell within the broad spectrum of reasonable, tactical decisions. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 689).

Figueroa also argues that defense counsel was ineffective at the *Wade* hearing because he failed to call Agent Kaden to the stand. Figueroa argues that, had defense counsel called Agent Kaden, Agent Kaden would have supported the defense's theory that the in-court identification by Hylton was unreliable because of "unduly suggestive procedures." *See* Petitioner's Reply at 15. However, the "decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial," *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987), and decisions of strategy are accorded a presumption of reasonableness. *Strickland*, 466 U.S. at 689. Furthermore, defense

council did indeed cross-examine Agent Kaden at trial, and had the opportunity to make his arguments regarding the unreliability of Hylton's in-court identification at trail rather than at the *Wade* hearing. Tr. at 802–829.

### III. The Motion to Amend the Petition

Finally, Figueroa maintains that the Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018) constitutes an intervening change in the law that requires the cell-site information obtained from Figueroa to be suppressed after the court grants him a new trial. *See* Motion to Amend, ECF No. 11. In *Carpenter,* the Supreme Court held for the first time that the government "must generally obtain a warrant before obtaining" cell-site location information. *Id.* at 2217. Figueroa contends that his cell-site location records must be suppressed because the government obtained warrants under the Stored Communications Act, which did not require a showing of probable cause.

Under the "good faith" exception to the exclusionary rule, when the Government "act[s] with an objectively reasonable good-faith belief that their conduct is lawful," the exclusionary rule does not apply. *United States v. Zodhiates*, 901 F.3d 137, 143 (2d Cir. 2018) (quoting *Davis v. United States*, 564 U.S. 229, 237–39 (2011) (internal quotation marks omitted). In *United States v. Zodhiates*, the Second Circuit considered the good-faith exception in regard to *Carpenter*, and noted that "prior to *Carpenter*, a warrant was not required for [] cell records." 901 F.3d 137, 144 (2d Cir. 2018). Since this was the law in the Second Circuit at the time the warrants in this case were obtained, to the extent *Carpenter* applies to the facts of this case, the "good faith" exception to the exclusionary rule applies. Accordingly, Figueroa's motion to amend his Petition is denied.[2]

---

[2] Moreover, even if the good-faith exception did not apply, the Government's warrants in this case *were* in fact supported by probable cause. *See Figueroa,* 663 F. App'x 25, 26–27. ("The remaining averments [in the affidavit accompanying the warrant application] provide more than adequate support for a probable cause determination . . . . We agree with the District Court that the information contained in the affidavit provided probable cause to believe

13

## CONCLUSION

For the forgoing reasons, Figueroa's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and his motion to amend his petition is **DENIED**. The Court also declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated:     November 26, 2019
              New York, New York

                                      **ANDREW L. CARTER, JR.**
                                      **United States District Judge**

---

that Figueroa was using the apartment as a drug stash house and that Hernandez lived there, used the cellphone that was the subject of the affidavit, and was involved in the drug conspiracy with Figueroa.").